UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 6:15-CR-39-GFVT-REW |
| | ) | No. 6:17-CV-223-GFVT-REW |
| v. | ) | |
| | ) | |
| BRIAN HAMILTON | ) | RECOMMENDED |
| | ) | DISPOSITION |
| Defendant/Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Movant, Brian Hamilton, is a federal inmate. On August 9, 2017, Hamilton filed a *pro se*[1] motion under 28 U.S.C. § 2255. *See generally* DE 210 (Motion). The United States responded in opposition. DE 218 (Response). Hamilton replied. DE 219 (Reply).

Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court determined to conduct an evidentiary hearing and, accordingly, appointed counsel for Hamilton. *See* DE 221 (Order). The Court held the evidentiary hearing on December 15, 2017, DE 230 (Minute Entry Order), and has carefully evaluated the full record, all briefing, and the hearing evidence (including three witnesses and three exhibits). For the following reasons, the Court **RECOMMENDS** that the District Judge **GRANT** § 2255 relief (DE 210)—on the terms stated below—to the extent Hon. Andrew Stephens, Hamilton's trial-level counsel, ineffectively

---

[1] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (noting that allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief") (citations and internal quotation marks omitted).

1

assisted Movant regarding his plea offer, otherwise **DENY** § 2255 relief (DE 210), and issue no Certificate of Appealability as to the rejected claims.

Counsel failed to effectively inform Hamilton of the terms and mechanics of a plea offer from the United States, particularly the import of the prosecutor's plea deadline. That failure caused Hamilton to forgo a plea deal that included a third-point reduction, under U.S.S.G. § 3E1.1(b), for timely acceptance of responsibility. The representation fell below the *Strickland* performance standard and prejudiced Hamilton. As such, the Court should grant the motion, tailor appropriate relief, and give Hamilton the sentencing benefit of the plea deal that counsel's ineffective conduct caused to lapse.[2]

## I.    BACKGROUND INFORMATION

In October 2015, a grand jury indicted Hamilton on one count of conspiring to defraud the Government (Count 1), four count of wire fraud (Counts 29–32), and two counts of aggravated identity theft (Counts 41–42), in violation of 18 U.S.C. §§ 286, 1343, and 1028(a)(1). DE 1 (Indictment). On May 10, 2016, Hamilton pleaded guilty to the conspiracy and one count of both wire fraud and aggravated identity theft. DE 142 (Minute Entry – Rearraignment). Judge Thapar sentenced Hamilton to 82-months' imprisonment. DE 193 (Judgment). Hamilton appealed. DE 195 (Notice). Hamilton, to the court of appeals, argued "the district court erred by not awarding him a minor-role reduction or an additional one-level reduction for acceptance of responsibility." DE 207 (6th Cir. Order Dismissing). The Sixth Circuit dismissed the appeal:

> Hamilton consented to a magistrate judge conducting his rearraignment. The magistrate judge discussed Hamilton's appellate-waiver provision with him in depth, noting its breadth. Hamilton stated that he understood the provision, that he had read it carefully, and that he had reviewed it with his counsel. That his sentence had not yet been imposed and he could not know if an error might arise during sentencing does not render his plea involuntary or unknowing. *See United States v.*

---

[2]As further discussed, Hamilton's other arguments for relief are meritless on this record.

> *Coker*, 514 F.3d 562, 574 (6th Cir. 2008). His plea agreement set out sentencing recommendations, which did not include a minor-role reduction or an additional one-level reduction for acceptance of responsibility. If Hamilton wanted to appeal these issues, he should have preserved his right to appeal them. *See id.*

*Id.* at 1–2.

On August 9, 2017, Hamilton timely submitted a § 2255 motion to vacate. DE 210. The motion renews both direct-appeal contentions and adds the claim that counsel's ineffective assistance during plea negotiations cost him an offense level reduction for acceptance of responsibility. The Government responded. DE 218. Hamilton replied. DE 219-1. The motion, following a hearing, stands ripe for review.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721–22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627,

3

630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.    ALLEGED SENTENCING ERRORS

In his § 2255 motion, Hamilton requests relief based on two sentence validity challenges— both previously dismissed on direct appeal. Specifically, Defendant contends the sentencing judge erred by not awarding him a minor-role reduction and by not overriding the Government's decision to deny him (by not making the motion) an additional one-level reduction for acceptance of responsibility. Both sentencing attacks fail under 28 U.S.C. § 2255, as waived and otherwise without merit.[3]

### A.  Collateral Attack Waiver

The Court first notes that Hamilton, in his plea agreement, waived "the right to attack collaterally the guilty plea, conviction, and sentence" except for "claims of ineffective assistance of counsel[.]" DE 188, at ¶ 13. At least other than "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[,]" "a defendant's

---

[3] Although not argued by the Government, the Court notes that guidelines arguments typically are not in the realm of § 2255. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("[A]n error in the application of the Sentencing Guidelines does not warrant collateral relief under § 2255 absent a complete miscarriage of justice.") (citing *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)). The claims here, as to U.S.S.G. application, do not implicate constitutional values or rise to the level of a cognizable non-constitutional claim. *See United States v. Lawrence*, No. 2:11-CR-52-DCR-1, 2016 WL 3212164, at *9 (E.D. Ky. Apr. 29, 2016) ("Defendant's claim [falls well short of] the 'positively outrageous' error envisioned in *Grant*.").

informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (enforcing appeal waiver). Hamilton, by executing the plea, acknowledged that he knowingly and voluntarily entered into the agreement and that he understood its terms after reviewing the full document with counsel. DE 188, at ¶ 22. At rearraignment, Hamilton, under oath, confirmed as much to the Court. DE 206, at 21. Judge Ingram also specifically reviewed the contents of the collateral attack waiver. *Id.* at 47–49. The record repeatedly confirms that Hamilton's responses were voluntary, verified, and competently made. *Id.* at 10, 18, 62–63. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering Defendant's representations in the plea agreement and during rearraignment, and the significance of his sworn in-court statements, the Court can only conclude that Hamilton made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422. Accordingly, and as with the appellate waiver already enforced, he remains bound by it. Since Hamilton claims no accompanying ineffective assistance as to the waiver term, the waiver bars consideration of his role reduction and *sua sponte* assistance reduction claims.

Alternatively—and given the autonomous ineffective-assistance claim—the Court addresses the claims' merits. As explained below, Hamilton's minor role reduction overtures are untenable and his request for Court usurpation of timely assistance discretion is baseless.

### B. Role Reduction

Hamilton claims entitlement to a minor role reduction under U.S.S.G. § 3B1.2, based on the self-serving claim that he was a fully subservient actor in the crime. DE 210, at 7. Section 3B1.2(b) provides for a two-level reduction for minor participants that are "**substantially** less culpable than the average participant[.]" U.S.S.G. § 3B1.2 cmt. 3(A) (emphasis added). Hamilton's

counsel argued for the same reduction in both formal (DE 182) and informal (DE 198, at 23–24) PSR objections, as well as at sentencing. DE 200, at 13–17. In essence, Stephens argued that Defendant was incarcerated for a year of the alleged eighteen-month conspiracy, that he rarely aided the conspiracy—only at the explicit behest of the major figures—and that he received but minimal monetary benefit. Hamilton tries to repeat the theories here.

Judge Thapar, then the District Judge assigned to the case, thoughtfully considered, and then rejected, Hamilton's minor role claim. *See* DE 200, at 13, 16–17. The PIR substantiated the finding that Hamilton was not a minor participant. *See* DE 198, at 27–28 (Sealed PIR). Hamilton objected but presented no evidence to place the finding in dispute under Rule 32. Judge Thapar recognized this, as a matter of proof and procedure, and denied the objection on that basis.[4] *See* DE 200, at 16. Hamilton failed to lodge a supported objection then, and there is no basis for revisiting that issue now, under § 2255.

### C.  *Sua Sponte Reduction*

Hamilton also bemoans the sentencing court's failure to grant him a further one-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b),[5] notwithstanding the Government's declination to move for that relief. DE 210, at 5. Defendant generally acknowledges that "the decision whether to file a motion for an additional one-point reduction [is committed] to

---

[4]*United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (noting requirement that defendant produce "'*some evidence*' contradicting the presentence report [before] a district court [must], at sentencing, engage in factfinding of its own") (citing *United States v. Adkins,* 729 F.3d 559, 570 (6th Cir. 2013)). Judge Thapar also said, at sentencing, "I understand he's definitely not a minor player." DE 200, at 39.

[5] U.S.S.G. § 3E1.1.(b) provides for an additional 1-level decrease "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."

the Government's discretion." *United States v. Lapsins*, 570 F.3d 758, 769 (6th Cir. 2009); *see* DE 210, at 5. Nonetheless, Hamilton believes that the sentencing court should have unilaterally granted the point.

There are two narrow exceptions to the deferential posture courts adopt[6] when reviewing a prosecutor's exercise of § 3E1.1(b) discretion. "[T]he government may refuse to move for the third-level reduction so long as the government's reason for refusal [1] is not based upon a constitutionally impermissible factor and [2] is not arbitrary." *United States v. Coleman*, 627 F.3d 205, 215 (6th Cir. 2010); *see United States v. Collins*, 683 F.3d 697, 705 (6th Cir. 2012) ("The defendant must present objective evidence of an improper motive or arbitrary action to overcome the government's decision not to file a § 3E1.1(b) motion.") (internal citations omitted). Hamilton does not allege a constitutional infirmity (nor is there any record suggestion of one). Hamilton also fails to allege an arbitrary act. Indeed, the Government identified a valid non-arbitrary basis for the decision: Hamilton's guilty plea, less than a week before trial, came too late to preserve prosecutorial resources. *See* DE 218, at 5. The factual record clearly supports the Government's stated rationale and forecloses Hamilton's conclusory challenge. DE 185 (May 2 Gupta e-mail noting "the United States has already subpoena'd [sic] and prepared over 20 witnesses for trial"); DE 200, at 9 ("This is not a trial that could be prepared in a week, or even two weeks[;] AUSA Gupta started preparing as early as February or March."). Accordingly, the § 3E1.1(b) prosecutorial discretion presumption controls. *See Collins*, 683 F.3d at 707 (holding Government's

---

[6] *See* U.S.S.G § 3E1.1 n.6 ("the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial"); *United States v. Johnson*, 495 F. App'x 657, 667 (6th Cir. 2012) (explaining that a "2003 amendment to § 3E1.1(b) . . . specified that the third-level reduction under § 3E1.1(b) may only be granted on motion from the government"); *United States v. Mackety*, 650 F.3d 621, 622 (holding that a district court may not usurp the Government's discretion to move for a point reduction under § 3E1.1(b)).

decision to withhold motion non-arbitrary where prosecution undertook trial-like preparations to defend a suppression motion); *Gilley v. United States*, No. 1:09-CR-45-HSM-WBC, 2016 WL 9344001, at *6 n.5 (E.D. Tenn. Jan. 28, 2016) ("[A] valid, non-arbitrary government interest[ ] for withholding a section 3E1.1(b) motion . . . [is] expressly identified in the text of the guideline itself—avoiding costs associated with preparation for a trial on the merits."). The Government had valid, non-arbitrary motives for its § 3E1.1(b) approach. Section 2255 offers no relief in this context. Hamilton does not argue against this, rather entreating the Court to appropriate prosecutor discretion. DE 210, at 5 ("taking discretion away from the Government"). The path Hamilton urges is one precedent forecloses; the Court will not take it.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL (IAC)[7]

Hamilton also requests relief based on alleged ineffective assistance of his former counsel (Hon. Andrew M. Stephens) regarding a lapsed plea offer and the attendant loss of an offense level reduction for § 3E1.1(b) timely acceptance of responsibility. Per Hamilton, Stephens failed to explain the meaning and effect of the prosecutor's plea offer deadline. The plea lapsed, and Hamilton lost the § 3E1.1(b) point.

For the reasons explained below, the Court finds that Stephens deficiently failed to convey the possibility of irrevocable third-point loss and ineffectively advised Hamilton that the prosecutorial deadline was not controlling. Further, Hamilton established a reasonable probability that, if accurately advised, he would have accepted the plea before it lapsed. Hamilton ultimately accepted—and was sentenced based on—an agreement that differed only by omitting the third

---

[7] As to communications necessary to litigate the ineffective assistance claims, Hamilton has waived attorney-client privilege. *See* DE 210, 219; *In re Lott*, 424 F.3d 446, 453–54 (6th Cir. 2005) (holding that petitioner's assertion of actual innocence effected no waiver of attorney-client privilege, but also finding implied waiver is "the result of a petitioner's assertion of his own counsel's ineffectiveness").

8

point reduction, a point lost by misadvice. Nothing in the record suggests that, had Hamilton accepted the original deal, such a plea would have been withdrawn, gone unaccepted, or that the resulting sentence would not have been similarly situated within the lower guideline range. Hamilton is thus entitled to relief on this distinct and limited ground.

### A. Strickland *Standard*

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064–65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the

earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). Ultimately, to satisfy the *Strickland* prejudice prong in the plea bargaining context, a movant must "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). [8]

### B. Performance

Hamilton's deficient performance claim boils down to two key questions: one factual, one legal. First, what did Stephens tell, or not tell, Hamilton before the April 11 deadline? Second, were Stephens's communications or omissions consistent with prevailing professional standards under the circumstances? The Court turns to the record to resolve the former.

#### i. Undisputed Facts

On November 24, 2015, the Government sent defense counsel a letter broaching the possibility of a plea agreement. DE 185, at 8–9. A month later, the prosecutor, Hon. Neeraj Gupta, contacted Stephens again, provided the broad contours of a possible plea agreement, and established a January 25, 2016, expiration for all existing offers. *Id.* at 8. Three days after that

---

[8] *Frye* and *Lafler* were § 2254 cases, but the analysis also applies to a § 2255 *Strickland* theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.") (citing *Davis v. United States*, 94 S.Ct. 2298, 2303–04 (1974); *Metheny v. Hamby*, 835 F.2d 672, 673–74 (6th Cir.1987)); *see also MacLloyd v. United States,* 684 F. App'x 555, 560, 562 (6th Cir. 2017) (applying *Frye* and *Lafler* in § 2255 context).

deadline expired, and given an interim trial continuance, DE 107, Gupta contacted Stephens to note the expiration, and offered new terms attached to an April 11, 2016, deadline. *Id.* at 7. Gupta stressed that missing the April deadline would forfeit the third point for timely acceptance. Stephens's first substantive response came over two months later—twelve days before offer expiration—and requested a plea status update. *Id.* at 6. Gupta's same-day response restated the terms offered in January and explicitly reiterated that: "Brian Hamilton can get the **third point** for acceptance of responsibility **if we can sign a plea agreement on or before April 11**." *Id.* (emphasis added). The next day, March 31, 2016, Stephens indicated that "Brian [Hamilton] is most certainly not interested in a trial." *Id.* at 5. Stephens and Gupta scheduled a plea discussion for April 6, after which Gupta provided a draft plea agreement and restated that "if the plea agreement isn't signed by April 11 then this particular deal will expire." *Id.* at 4. On April 12, Gupta wrote "to confirm that Andrew Stephens did not contact our office regarding Brian Hamilton since we sent the draft plea agreement on April 6" and advised that the plea agreement had expired. *Id.* at 3.

Two weeks later, Stephens sent a letter to Gupta. *Id.* at 2. In relevant part, Stephens requested a new plea offer and noted that, "extension of an offer may offend you [sic] self-imposed deadline, but does comply with subpart 1 of the Court' [sic] standing order concerning re-arraignment." DE 223-2, at 2.[9] In response, Gupta offered a new plea "removing the third level of acceptance for a timely plea" and setting an April 28 deadline. DE 185, at 1. On May 2, 2016,

---

[9] The referenced portion of Judge Thapar's standing pretrial order stated: "Motions for Rearraignment. If the defendant intends to enter a plea of guilty, defense counsel shall file a motion for rearraignment. All motions for rearraignment shall be filed no later than fourteen (14) days before the scheduled trial date. A defendant is advised that failure to comply with this filing requirement will be considered by the Court in determining whether to grant credit for acceptance of responsibility. *See* U.S.S.G. § 3E1.1." DE 49-1, at 4.

Stephens relayed Hamilton's desire to plea and stated, "when I spoke with him last, he asked me to 'do better', but if not to plead as offered. I would ask that you insert a provision that doesn't remove the third point, but holds the withdrawal of same to sentencing." *Id.* Gupta noted that the most-recent plea expired on April 28, advised that the third point would not be offered, but acknowledged the Government's willingness to nonetheless honor the April 26 offer, which omitted the third point. *Id.* On May 3, Stephens responded as follows:

> I will advise mr Hamilton of your position. However, It seems that this position opens me up for post-sentencing litigation because it would appear that denial of the third point is my responsibility. I share emails with the client when they are relevant to settlement negotiations. He will thus see your calendar of our contacts and could draw a conclusion that not complying with your scheduling deadlines is the sole cause of the loss of the 3rd point. As a practice matter, that is a very troubling issue with me. I regret sincerely the way in which this matter has developed.
>
> **I continue to believe that the court's scheduling order, which I have diligently compiled with, is the standard by which the requisites for the third point is to be judged upon.** As this has, in fact been complied with, I believe that exclusion of the third point is contrary to the Court's stated procedures and thus, feel compelled pursuant to my ethical and professional obligations to my client, to argue for the third point during the plea, in my sentencing memorandum, and at the allocution during the sentencing hearing.

DE 234, at 1 (emphasis added).

Hamilton subsequently executed a plea agreement expressly conceding that the Government would "not move to decrease the offense level for timely notice of intent to plead guilty that avoided trial preparation and inefficient resource allocation." DE 188, at ¶ 9(g). Nonetheless, and consistent with his stated intentions, Stephens argued for the third point at sentencing. DE 200, at 4–12. He repeated his oft-stated opinion that it was inappropriate "that the United States would put me under an artificial deadline to enter the plea" and that the Government setting a hard deadline was new practice in his experience. *Id.* at 4, 9–10. Stephens also reiterated his belief that Judge Thapar's standard scheduling order controlled his duties with regard to §

12

3E1.1(b) timeliness. *Id.* at 6. Finally, after Judge Thapar advised him that the rules and guidelines give the Government discretion regarding such deadlines, Stephens acknowledged the possibility that he could have been at fault for Hamilton losing the third point by "not . . . spending earlier time with him[.]" *Id.* at 11.

Ultimately, Judge Thapar overruled Stephens's objection and, finding no allegation of arbitrariness or unconstitutional motive,[10] declined to override the Government's third-point discretion. *Id.* at 12. The preceding facts are essentially undisputed. However, the stories diverge on the extent and content of pre-April 11 discussions between Hamilton and Stephens. The Court summarizes their respective versions, based on the December 15, 2017, evidentiary hearing (DE 230).

### ii. *Hamilton's Version*

Per Hamilton, the first time Stephens showed him a plea agreement was at a meeting one day before the April 11th deadline. DE 237, at 29 (Evidentiary Hearing Transcript). At that April 11th meeting, Stephens reportedly told him there was a deadline, but told him "he didn't agree with the deadline" and that he would be back on Wednesday (April 13th) to get an answer. *Id.* at 30. Importantly, Hamilton claimed Stephens never discussed the specific consequences of the deadline nor the potential loss of the third point. *Id.* Finally, Hamilton definitively stated that if he had known the deadline-expiration repercussions, he would have accepted the offer on April 10th, or called Stephens pre-expiration to accept. *Id.* at 31–32, 34.

On cross, Hamilton further explained that Stephens disagreed with Gupta's "self-imposed deadline" because the District Court said it wanted a plea fourteen days before trial, and that, as

---

[10] The two bases for interference with Government discretion in moving for the third point identified in *Collins*, 683 F.3d at 707, and discussed above.

Hamilton understood it, the deadline was simply the date when Gupta wanted an answer for his convenience. *Id.* at 33–34, 40. He testified to being unaware that missing the April 11 deadline would lose the third point for timely acceptance. *Id.* at 39.

### iii. *Stephens's Version*

Stephens's testimony, understandably, rested largely on his case file records. Mr. Stephens is a member of the District's CJA Panel and, as he testified at the hearing, has handled hundreds of federal cases. DE 237, at 7. The Court would not expect Stephens to recall practice details of a client meeting he had eighteen months prior. Per Stephens, file notes indicate he had meetings with Hamilton on April 6, 7, 10, 17, and 21, 2016. DE 237, at 9–10. Further, Stephens's notes signaled to him that he informed Hamilton about the April 11 deadline and told him that expiration would result in loss of the third point. *Id.* at 9 ("My notes would indicate that I did."). Specifically, Stephens claimed his notes show that during an April 7, 2016, meeting with Hamilton: "I talked to him in-depth . . . about what Mr. Gupta was saying and what Mr. Gupta was not saying, and I see Mr. Gupta's note—or name actually written down." *Id.* at 10–11. However, Stephens also explained "that I told Mr. Hamilton that I thought that Mr. Gupta's deadline was artificial. That I actually talked about the trial order that gave us the right for Judge Thapar to file the motion for rearraignment within two weeks of the actual trial date. I told him I thought that trumped Mr. Gupta's deadline." *Id.* at 11–12 (emphasis added). Stephens later reiterated "what I believed and what I told my client was that I thought we could plead up to the 14 days before the trial." *Id.* at 16.

Stephens's testimony hinged on his notes, but he was unwavering in two respects: (a) that he told Hamilton about the lost point issue; and (b) that he called the deadline imposed by the prosecutor "artificial" and inconsistent with court order. *Id.* at 25–26.

*iv. Factual Resolution*

The players' stories conflict on several issues, but the Court finds it necessary to directly resolve only the divergence between the parties' disparate accounts as to deadline discussions. Other contradictions are largely irrelevant to the core claim.

Specific meeting dates is an example. The Court cites the visit dates identified in Stephens's September 8, 2016, CJA Voucher (Voucher).[11] Stephens completed the Voucher temporally closer to the events in question. The Voucher records three April 2016 jail visits that match all but two (April 7 & 21) of the five April dates Stephens's notes reflected: April 6, 10, and 17. An April 6th visit also squares with the e-mail records.[12]

Moreover, the actual visit dates are only mildly probative of the central issues. Both Stephens and Hamilton agree there was at least one pre-deadline meeting and that Stephens conveyed the existence of the April 11th deadline to Hamilton before expiration. The actual date of any such meeting is of minimal importance save indirectly (*e.g.,* on credibility) and the number of visits is only material to the extent additional pre-deadline meetings might have offered more opportunities to convey the relevant deadline repercussion. Thus, the Court finds that April 6th and 10th pre-deadline visits occurred.

---

[11] Currently, the Voucher is not a part of the official record. Stephens, however, mentioned the Voucher during his testimony as a source to confirm visit dates. DE 237, at 17. To clarify the history and ensure a complete accounting, the Court, in its discretion, will direct the Clerk to file the Voucher contemporaneously with this Recommended Disposition. *See* Rule 7, Rules Governing § 2255 Proceedings (Rule 7). Though Rule 7 does not explicitly reference *sua sponte* record supplementation, the 2004 amendment notes state that "Rule 7(a) is not intended to restrict the court's authority to expand the record through means other than requiring the parties themselves to provide the information." Further, the Criminal Justice Act makes vouchers in completed cases public record. *See* 18 U.S.C. § 3006A(d)(4). In this context, the Voucher itself is part of "the files and records of the case" under consideration. 28 U.S.C. § 2255(b). Any party may, under normal objection mechanics, contest Voucher docketing to the District Judge.

[12] Unfortunately, hearing testimony from SA Sagrecy revealed that jail visitation records are unavailable.

15

Turning to the more important question—pre-deadline discussion contents—the Court finds that Stephens did not effectively convey that expiration of the deadline would result in loss of the third point. The principal contrary evidence comes from Stephens's testimony. Several factors erode the force of that testimony. As noted above, Stephens primarily based his testimony not on recollection, but on his notes. *See* DE 237, at 9 ("My notes would indicate that I did."); *id.* at 10 ("And the notes speak for themselves."). The only specific note-basis Stephens identified for the possible point loss discussion was AUSA Gupta's name in April 10th notes. DE 237, at 10–11. Further, although Stephens alleged the April 7th notes are also supportive, he failed to claim a specific note trigger—the Voucher also omits reference to *any* April 7 meeting.

The Court has thoroughly examined the notes and is unable to locate anything indicative of a looming lost point discussion. Stephens never convincingly explained how he could parse out the alleged meaning from notes 18+-months old. The word deadline (or any analog) does not appear in the notes.

Indeed, the Court has carefully scrutinized the notes. Nothing in the papers specifically mentions any deadline or § 3E1.1. Further—and the Court views this as critical—every guideline calculation reflected in the notes includes a 3-point reduction for "A/R," which in context indicates acceptance of responsibility.[13] *See* Def.'s Ex. 1. Thus, notes from 4/6 and 4/10, both pre-deadline, reflect three points. *Id.* Then, in notes from 4/17, six days post-deadline, the notes state "-3 A/R." *Id.* Thus, in that entry, just a few lines after noting offer withdrawal, Stephens yet includes the full three points in the guideline calculation. This surely means that Stephens did not convey to

---

[13] Herein, citations to "exhibits" reference proof offered at the evidentiary hearing. *See* DE 231 (Exhibit and Witness List). The Court will cite particular records as they are logged in the docket, *e.g.*, Stephens's notes were Defendant's Exhibit 1. *See* DE 231.

Hamilton that the third point was, by that point, gone. Rather, Stephens continued to advise Hamilton that a plea would net him the third point.[14]

Ultimately, the Court finds determinative what Stephens repeatedly made clear throughout the proceedings: he believed the Gupta deadline was artificial and that Judge Thapar's scheduling order controlled. *See, e.g.,* DE 237, at 16 ("Now, what I believed and what I told my client was that I thought we could plead up to the 14 days before the trial."). As the sentencing discussion above makes clear, Stephens was wrong—prosecutorial discretion concerning the third-point motion is near-absolute. *See supra* Part III.C. Stephens thought the deadline "artificial." He believed and told Hamilton that Judge Thapar's scheduling order "trumped" the prosecutor's deadline. DE 237, at 12. On May 3, he stated: "I continue to believe that the court's scheduling order . . . is the standard by which the requisites for the third point is to be judged[.]" DE 234, at 1. Before the sentencing, Stephens argued that compliance with the court's deadline still would be "timely" acceptance. DE 182, at 4 (emphasis in original). The Court finds it implausible that Stephens carefully advised Hamilton that he was losing the third point as of 4/11 when Stephens himself flatly did not believe that to be true or accurate. The notes from 4/17 starkly show that Stephens continued to count on Hamilton receiving the additional level reduction, even after the offer lapse.

The Court finds that Stephens did not convey to Hamilton that the 4/11 expiration would eliminate Hamilton's access to the § 3E1.1(b) third level. Either Stephens utterly failed to address the third point, or Stephens cited the deadline, but only in a way that emptied the discussion of any

---

[14] That said, the Court did not find Hamilton's testimony overwhelmingly credible. Not only was Hamilton's version subject to self-interest bias, it was certainly not free of inconsistencies. *See, e.g.*, DE 237, at 37 ("I mean, he told me one thing, that we wouldn't be able to do any better, but then he insinuated, like that statement, that he was hoping that I didn't take it.").

real force or vitality. If Hamilton's trained and expert counsel told him the deadline was "self-imposed," "artificial," and "trumped" by Judge Thapar's scheduling order—and that all did happen—he did not meaningfully convey the gravity of a decision to let the 4/11 date pass without plea acceptance. Hamilton behaved accordingly. *See* DE 237, at 46 ("[W]hen [Stephens] said self-imposed, I took it as Mr. Gupta wanted to know on Monday – I mean I thought . . . two lawyers, they do this a lot . . . I didn't think that it would be withdrawn."). Hamilton thought any deadline was non-binding, for Gupta's convenience, and without prejudice.

In sum, the record preponderantly shows: that Stephens did not effectively explain to Hamilton that if he failed to accept the third-point inclusive offer before the April 11 deadline his sentencing prospects would be irreparably damaged; he, relatedly, affirmatively misadvised Hamilton by telling him the plea deadline was artificial and trumped by Judge Thapar's scheduling order deadline. Having so found, the Court examines Stephens's performance against *Strickland* dictates.

> ### *v.* Strickland *Compliance*

Bearing in mind the deference due to counsel, the Court nonetheless finds that Stephens's advice fell below "prevailing professional norms" under the circumstances. *Strickland*, 104 S. Ct. at 2064–65. The Government, notably, does not argue otherwise. DE 218, at 2–4. "Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides." *Frye*, 132 S. Ct. at 1408. In the context of plea discussions, the ABA standards provide:

> (b)  Once discussions with the prosecutor begin, defense counsel should keep the accused advised of relevant developments.  Defense counsel should promptly communicate and explain to the client any disposition proposals made by the prosecutor[.] . . .

(c)  Defense counsel should ensure that the client understands any proposed disposition agreement, including its direct and possible collateral consequences.

ABA Criminal Justice Standards for the Defense Function, Standard 4-6.2 (4th ed. 2015). The

Defense Function Standards further indicate:

(e)  Defense counsel should investigate and be knowledgeable about sentencing procedures, law, and alternatives, collateral consequences and likely outcomes, and the practices of the sentencing judge, and advise the client on these topics before permitting the client to enter a negotiated disposition.  Counsel should also consider and explain to the client how specific terms of an agreement are likely to be implemented.

*Id.* at Standard 4-6.3.[15] Gupta's pellucid e-mails made plain that passage of the deadline without

Hamilton's acceptance would cost him the third point for acceptance of responsibility. The record

shows that Stephens failed to inform Hamilton of this looming consequence. This lapse falls

outside the objective bounds of reasonable professional practice. *See Padilla v. Kentucky,* 130 S.

Ct. 1473, 1482 (2010) ("The first prong—constitutional deficiency—is necessarily linked to the

practice and expectations of the legal community: 'The proper measure of attorney performance

remains simply reasonableness under prevailing professional norms.'") (quoting *Strickland*, 104

S. Ct. at 2065). Stephens all but acknowledged as much during Hamilton's sentencing and via e-

mail. *See* DE 200, at 11 ("[T]hat's my trouble about this, because if that's my fault in not, you

know, spending earlier time with him, his not getting the point is probably on me and -- and that

---

[15] *See also* ABA Criminal Justice Standards on Guilty Pleas, Standard 14-3.2(a) (3rd ed. 1999) ("Defense counsel should keep the defendant advised of developments arising out of plea discussions conducted with the prosecuting attorney, and should promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney."); SCR 3.130, Rule of Professional Conduct 3.130(1.4) ("A lawyer shall: . . . (3) keep the client reasonably informed about the status of the matter; . . . A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").

troubles me, quite honestly."); DE 234 ("It seems that this position opens me up for post-sentencing litigation because it would appear that denial of the third point is my responsibility.") (emphasis added). Gupta conveyed the deadline to Stephens as early as January 28, 2016, DE 185, at 4–7. Stephens was cavalier toward the plea schedule, deeming Gupta's approach a self-imposed outlier, subordinate to Judge Thapar's standard order and practice. Counsel did not reasonably appreciate the plain risk in this view, and he did not adequately warn Hamilton of the need for a timely response. This was not effective assistance.[16]

Hamilton depended on Stephens, as his lawyer, to accurately convey all relevant repercussions related to a possible plea. *See* ABA Criminal Justice Standards for the Defense Function, Standard 4-6.3 ("Defense counsel should investigate and be knowledgeable about sentencing procedures, law, and alternatives, collateral consequences and likely outcomes[.]"). Stephens's analysis and the advice he gave Hamilton conflicted directly with the guidelines and clearly established Sixth Circuit precedent. *See* DE 200, at 12; *see e.g.*, *Lapsins*, 570 F.3d at 769 ("[T]he decision whether to file a motion for an additional one-point reduction [is committed] to the Government's discretion."). The chronology here may reflect novel prosecutor practice, but Stephens should have known and communicated that a prosecutor's deadline could and would control the prosecutor's own decision of whether to file the requisite third level motion under § 3E1.1(b).

In sum, the Court finds that Stephens ineffectively assisted Hamilton during plea negotiations. His deadline management, by omission and commission, was "fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of

---

[16] The Court must note that Stephens has long been an exemplary panel member. This case, unfortunately, requires a conclusion critical of his performance as to the particular plea mechanics involving Hamilton.

a plea agreement." *Padilla*, 130 S. Ct. at 1484 (internal citation omitted). As to the third point loss and the plea deadline lapse, Stephens, to the prosecutor, "apologize[d] for [his] tardiness" (DE 223-2, at 2) and later starkly conceded, "denial of the third point is my responsibility." DE 234, at 1. The Court's placement of fault simply reflects the full record and aligns with the contemporaneous view of defense counsel.

### C. Prejudice

Hamilton also established a reasonable probability that his ultimate sentence would have been more favorable if he were assisted effectively. The Government's principal contention is that Defendant would not have accepted the offer even if Stephens told him deadline expiration would cost him the third point. DE 218, at 3–4. The record contains ample contradictory evidence. Hamilton unequivocally testified that he would have accepted the plea before April 11 if aware of the looming third-point loss. DE 237, at 31–32. The subsequent plea on less-favorable terms corroborates Hamilton's claim. Stephens's e-mail and evidentiary hearing statements confirm that Hamilton never considered a trial and likewise augment the prejudice proof. DE 237, at 17 ("I don't think there was ever any time that we seriously considered a trial."); DE 185, at 5 (March 31 e-mail to Gupta explaining Hamilton "is most certainly not interested in a trial"). Hamilton's sworn position is that he would have accepted the plea by April 11—he even said he would have called Stephens on the final day to tell him the decision. *See* DE 237, at 34. At the very next meeting (likely the 17th, but no later than the 21st, based on the chronology and records), Hamilton told him to get the prior deal if he could do no better. Def.'s Ex. 1 (Stevens notes purportedly from 4/21: "If [possible] better deal. If no get the other one back."). Although Stephens did not reach out to Gupta for another several days (not until the 4/26 letter), the Court easily finds a reasonable probability that Hamilton would have accepted the 4/11 deal if well-advised. Remember, by early

May, Hamilton took the identical deal, less the fateful third level point. On this record, the Court agrees that Hamilton, properly advised, would have struck the deal including the third level by 4/11.

Nonetheless, the Government contends Hamilton asked Stephens to "do better," and thus rejected the plea offer before expiration. The Court disagrees. First, there is no record support for Hamilton telling Stephens to simply "do better." Rather, Hamilton asked Stephens to "do better" or, "**if not**[,] **to plead as offered**." DE 185, at 1 (emphasis added). The proof also suggests the statement the Government relies on came *after* deadline expiration. *Id.* ("[W]hen I spoke with [Hamilton] last, he asked me to 'do better', but if not to plead as offered."). Stephens's *May 2*, 2016, e-mail depicted Hamilton's desire for a better plea as arising from their *last* conversation. *Id.*[17] Stephens testified that notes from their *last meeting* indicated Hamilton mentioned a better deal, and indeed the April 21, 2016, notes are supportive. DE 237, at 15 ("In the last meeting, very clearly my notes reflect, and I remember it clear as day, if I can get a better deal, get a better deal.").

The Government appears to make two other arguments. First, and related to the offer-rejection claim, the Response suggests that Hamilton's failure to accept after being shown the plea agreement forecloses any prejudice argument. DE 218, at 2. Proverbially, the Government takes issue with the cart, but ignores the horse's deficiencies. That is, by ignoring the first *Strickland* prong, the United States fails to account for misadvice impact. The crux of Hamilton's claim is that he did not accept precisely because Stephens was ineffective. Hamilton's failure to abide by a deadline that he was unaware of or affirmatively misadvised about says little about how he would have acted with accurate lawyering.

---

[17] The Voucher places the last pre-May 2, 2016, Stephens-Hamilton communication on April 17, 2016, after the deadline.

The United States also attempts to connect the knowing and voluntary status of the subsequent plea with prejudice rebuttal. True enough, Hamilton signed a plea deal that acknowledged the Government would not move for a third point. DE 140, at ¶ 9(g). Hamilton also confirmed, at rearraignment, that he had as much time as he needed to discuss plea proposals with his counsel, and that no one promised him anything additional to get him to sign. DE 206, at 32–34. However, Hamilton also clarified that he had encountered two pleas, "but one was pulled before I could deny it or accept it." *Id.* at 34. That Hamilton ultimately accepted a lesser plea deal is hardly evidence that he would not have accepted a more favorable deal weeks earlier, if he had known the full story. To the contrary, taking a less favorable deal, in the same time frame, tends to suggest a likelihood of taking the better deal mere days prior. *Cf. Randall v. United States*, 2014 WL 4311043, at *7 (W.D.N.C. Sept. 2, 2014) ("Having determined that petitioner received ineffective assistance of counsel in considering the first plea offer, the court need not consider petitioner's acceptance of the second [third pointless] plea offer as it was facially less beneficial to petitioner than the first.").

Finally, the Court views Judge Ingram's acceptance of Hamilton's eventual plea and Judge Thapar's in-guideline sentence as establishing "a reasonable probability the [original] plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Frye*, 132 S. Ct. at 1409. Likewise, there is no dispute that the third point reduction for acceptance of responsibility would have lowered Hamilton's primary guideline range from 51-63 months to 46-57 months.[18] There is, at minimum, a reasonable probability that Judge Thapar would have given

---

[18] At sentencing, Hamilton's Criminal History Category of VI combined with a total offense level of 17 to produce the 51-63 month range. DE 198, at ¶ 81. An additional one-point offense level reduction for acceptance of responsibility, with Hamilton's criminal history, would reduce the range to 46-57 months. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. The Count 41 mandatory minimum would be consecutive to any sentence.

Hamilton a near-middle guideline sentence based on the modified range, just as he did before. Thus, the record supports a reasonable probability that, but for Stephens's ineffectiveness, Hamilton would have received a lesser sentence. *Cf. Glover v. United States*, 121 S. Ct. 696, 698 (2001) ("[A]ny amount of actual jail time has Sixth Amendment significance."); *Randall*, 2014 WL 4311043, at *3, 7 (finding prejudicial a "loss of the third point for acceptance of responsibility" resulting from plea negotiation IAC). Judge Thapar split the Count 1 guideline range (plus a month) before adding the consecutive 24 months on Count 41. DE 200, at 39. A lower range would likely yield a lower sentence.

These findings, the controlling legal standards, and the full record convince the Court that Hamilton is entitled to habeas relief. As the *Frye* Court said, "for the offer was a formal one with a fixed expiration date. When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." 132 S. Ct. at 1408. Hamilton had the plea, but he did not have proper awareness of the deadline, fitting the situation within *Frye*'s rule.

If the District Court accepts the recommendation, it must fashion an apt remedy. The parties did not brief that aspect. The Supreme Court has stated:

> Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S. Ct. 665, 66 L.Ed.2d 564 (1981). Thus, a remedy must "neutralize the taint" of a constitutional violation, *id.,* at 365, 101 S. Ct. 665, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.

*Lafler*, 132 S. Ct. 1388–89. *Lafler* outlined the appropriate remedy when a plea lapse results in a greater sentence, which is the case here:

> The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of

trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, *the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.*

*Id.* at 1389 (emphasis added). Hamilton did not go to trial, but the remedial model still logically applies. The lone difference between the lost and the accepted plea deal was the 1-point reduction, and thus, the higher sentence. The terms otherwise were identical. The Court can, upon a proper hearing, and with party input, consider the matter and tailor the remedy to fit the discrete constitutional violation presented, in accordance with *Lafler*.[19]

Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** DE 210 **IN PART**, and on the stated terms.[20]

## V.   CERTIFICATE OF APPEALABILITY

---

[19] This, as a matter of practice, could simply be resentencing under a guideline range that reflects application of the third point. *Hsia v. United States*, 2016 WL 3844206, at *9 (D.N.J. July 14, 2016) (When, as a result of an "[unconstitutionally] ill-advised refusal of a guilty plea[,]" a Defendant "receive[s] a harsher sentence than he otherwise would have . . . the **standard remedy** would be a resentencing wherein the petitioner could receive a sentence equal to that 'offered in the plea, the sentence he received at trial, or something in between.") (emphasis added) (citing *Lafler*, 132 S. Ct. at 1389). *Lafler* vests the district courts with sufficient flexibility in crafting a remedy to encompass the preceding fix. Additionally, the Court perceives the instant situation as wholly outside the realm of cases when "resentencing alone will not be full redress for the constitutional injury." *Lafler*, 132 S. Ct. at 1389. In these circumstances, requiring the involved players to jump through the hoops of plea agreement re-offering would not apply under *Lafler* and also would "squander [ ] considerable resources[.]" *Id.* at 1388–89.

[20] To ensure a clear and complete record, the Court **ORDERS** the Clerk to file the referenced CJA Voucher, already in the Clerk's papers, in the case record. Additionally, the Court **EXTENDS** Hon. Whitney T. Lawson's appointment through, if necessary, resentencing. She shall represent Hamilton on all pending matters before the District Court, including objections, associated briefing, and any resentencing.

The Court addresses the Certificate of Appealability requirement, but only for the rejected claims. A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Movant has not made a "substantial showing" as to either rejected claim; the sentencing error claims conclusively fail, for the reasons discussed above. Reasonable jurists would not find the Court's determination on or assessment of the merits debatable or wrong. Judge Thapar rejected the merits of both claims at sentencing, and the Sixth Circuit already upheld the waiver on direct appeal. *See* DE 387; DE 200, at 12–13, 16–17. Nothing in the record indicates those conclusions were unreasonable; nor does the Court perceive anything that would give a reasonable jurist pause in accepting the Court's consistent rulings in the § 2255 context. The Court's findings and conclusions, given the full record and case proof, are not debatable or wrong. *See, e.g., United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004) (The "determination [whether to grant a COA]

is based on an overview of the claims in the habeas petition and a general assessment of their merits." (internal quotation marks removed)). Further, there is no need to grant a Certificate of Appealability on the proven IAC claim. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## VI.    RECOMMENDATION

For the reasons discussed, the Court **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** § 2255 relief (DE 210) on the terms—and with the concordant mechanics—stated above, and issue **NO** Certificate of Appealability on the unsuccessful claims.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 22nd day of January, 2018.

**Signed By:**

**_Robert E. Wier_**

**United States Magistrate Judge**